UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MATTHEW MCMAHON and GABRIEL MCMAHON, *Plaintiffs*, | §§§§§§§§§§ | |
| vs. | §§§ | CIVIL ACTION NO. 2:25-cv-122 |
| OFFICER ARMONDO CISNEROS (BADGE 15056), In his personal capacity, OFFICER TYLER SCHAFFNER (BADGE 18081), In his personal capacity, and CITY OF CORPUS CHRISTI *Defendants.* | §§§§§§§§ | |

## COMPLAINT

Plaintiffs, who are brothers sharing a two-bedroom apartment at the time of the claims below, Matthew McMahon (hereinafter "Matthew") and Gabriel McMahon (hereinafter "Gabriel"), by and through counsel CJ Grisham, brings this Complaint against Defendants Officer Armondo Cisneros (herein referred to as "Defendant Cisneros"), in his personal capacity, and Officer Tyler Schaffner (herein referred to as "Defendant Schaffner"), in his personal capacity, and in support thereof alleges the following upon information and belief:

## INTRODUCTION

*""The 4th Amendment and the personal rights it secures have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." ~ Potter Stewart*

*""The Fourth Amendment is clear; we should be secure in our persons, houses, papers, and effects, and all warrants must have probable cause. Today the government operates largely in secret, while seeking to know everything about our private lives - without probable cause and without a warrant." ~ Ron Paul*

In his dissent in *Olmstead v. U.S.,* Justice Louis D. Brandeis noted that "Experience should teach us to be most on our guard to protect liberty when the government's purposes are beneficent. Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers. The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding." *Olmstead v. United States*, 277 U.S. 438, 48 S. Ct. 564 (1928) (dissenting). In 1967, the Supreme Court would overrule *Olmstead* in the *Katz* case and prove that Brandeis was right about the protections afforded by the Fourth Amendment.[1]

Now, nearly 100 years after *Olmstead* and about 60 years after *Katz*, it is clear that Defendants don't feel as if the protections afforded by the United States Constitution apply to them on the simplest and most litigated of issues: search and seizure.

---

[1] *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507 (1967).

Defendants were called to an apartment based on a 911 call from violent trespassers who were either drunk and/or high on drugs and who claimed that they were assaulted by Plaintiffs. Upon arrival, officers attempted to get Plaintiffs to leave their home voluntarily, which they refused since they were not under arrest and had broken no laws. Defendants told Plaintiffs they "just wanted to talk outside." However, when Plaintiffs refused to come out willingly, Defendants escalated tensions and threatened to arrest Plaintiffs if they did not come out willingly. Under threat of arrest, Plaintiffs peacefully exited their home.

The drunken trespassers claimed that they were assaulted and threatened by Plaintiffs with a firearm. Plaintiffs explained that they had video proof the women refused to leave their apartment and were, in fact, the aggressors. Plaintiffs explained that Leah, one of the drunken trespasser, grabbed two knives, necessitating the need for self-defense with a firearm. Defendants refused offers to look at Plaintiffs' Ring doorbell prior to making a decision that they were going to arrest the young men and then unlawfully search their home.

Defendants executed a warrantless search of Plaintiffs' home despite explicitly refusing to consent to a search. Defendants then pressured Plaintiffs' girlfriend into signing a consent form to search the apartment when she had no authority to consent.

Plaintiffs were falsely charged with aggravated assault with a deadly weapon on May 12, 2023.  Charges were dismissed on May 26, 2023.  On June 5, 2023, Matthew filed to have his firearm returned, but was informed that his firearm had been destroyed in violation of state law.

Plaintiffs have a right to be free from illegal searches and seizures and retaliation for exercising their rights.

This action is a civil rights action under the Fourth and Fifth Amendments of the United States Constitution, Negligent hiring, Negligent training, Malicious Prosecution, 18 U.S.C. §§ 1983 and 1985, challenging Defendants' actions and conduct that violates Plaintiffs' rights.

## JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States of America.

2. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff's claims for damages are authorized by 18 U.S.C. §§ 1983 and 1985.

4. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Nueces County, Texas.

## PLAINTIFFS

5. Plaintiff, Mr. Matthew McMahon ("Matthew"), is a citizen of Nueces County.

6. Matthew has a substantial interest in being free of harassment, retaliation, official oppression, violation of his civil rights, conspiracy to violate rights, and abuse of authority under color of law.

7. Plaintiff, Mr. Gabriel McMahon ("Gabriel"), is a citizen of Nueces County.

8. Gabriel has a substantial interest in being free of harassment, retaliation, official oppression, violation of his civil rights, conspiracy to violate rights, and abuse of authority under color of law.

## DEFENDANTS

9. Defendants, collectively, are government officials and entities.

10. Defendants operate in their official personal capacities in Nueces County, Texas.

11. Defendant City of Corpus Christi ("the City") is a political subdivision organized under the authority of the Texas Constitution, Article XI, Section 5.

12. Defendant Officer A. Cisneros ("Defendant Cisneros") is a police officer with the City of Corpus Christi Police Department at all pertinent times to this action, and is being sued in his personal and official capacities.

13. Defendant Officer T. Schaffner ("Defendant Schaffner") is a police officer with the City of Corpus Christi Police Department at all pertinent times to this action, and is being sued in his personal and official capacities.

14. Defendants, as government officials and entities, are bound to the United States and Texas Constitutions.

15. At all times relevant herein, Defendants acted in their personal and official capacities within Nueces County, Texas.

16. Defendants, as government officials and entities, are not permitted to engage in actions that violate the United States and Texas Constitutions.

## STATEMENT OF FACTS

17. The drunken women claimed that they were assaulted inside of the apartment when the reality is that the women became belligerent and violent, causing Plaintiffs to demand that they leave the apartment. When they refused to leave the apartment, Plaintiffs pushed them out of the apartment. At one point, the drunkards made their way back into the home and Leah, who appeared either drunk or high (or both) grabbed two knives from the kitchen and threatened Plaintiffs in their own home. Fearing for his life, Plaintiffs each retreated to their rooms and secured their firearms to protect themselves and their property. Leah dropped the knives and ran out of the apartment screaming for someone to call

911. Plaintiffs' Ring doorbell captured each attempt to push the drunkards out of the apartment prior to the incident.

18. When Defendants arrived, they unquestionably took the side of the drunken trespassers. When Plaintiffs explained what happened, officers refused to even entertain their story in the face of making a decision based on a phone call by attractive women they were likely seeking to impress.



*Figure 1 Plaintiffs' first attempt to push trespassers from apartment. Notice Carmelle Remington pulling Matthew's hair as she's being pushed out of the home.*



*Figure 2 Plaintiffs' second attempt to push out belligerent trespassers. Leah Hermon, the woman who grabbed the knife, is seen on the right rushing back in after Carmelle is pushed out again.*



*Figure 3 Leah shown after she was forced out of the home at gunpoint after grabbing a knife crying hysterically for someone to call 911 because Plaintiffs "had a gun."*

19.  Once outside the home, officers attempted to gain permission from Plaintiffs who are both on the lease to the property.  Unable to obtain permission or consent to search their home, Officers pressured Gabriel's girlfriend to sign a release to search the home despite the girlfriend having no lawful authority to consent to the search.

20.  Defendants were aware that no one else was in the home.

21.  Defendants were aware that the suspects were outside the home, searched, and handcuffed.

22.  Defendants knew that they did not have exigent circumstances to conduct a search of Plaintiffs' home without a warrant.

23.  Defendants knew that the apartment was occupied by multiple parties and that Izzy did not have authority to consent to a search of the premises of which she had no control.

24.  Defendants knew that they did not have a warrant to search a locked safe located inside Matthew's closet.

25.  Defendants were negligent in conducting a thorough investigation prior to arresting Plaintiffs.

26.  Defendants knew that Plaintiffs had a right to evict Leah Harmon because "her child" was an adult and didn't need supervision.

27.   Defendants intentionally left out the important facts, such as the fact that Leah grabbed two kitchen knives prior to "Matthew grab[bing] his gun and point[ing] it at Leah's head."

28.   Defendants knew or should have known that Plaintiffs have a right to use deadly force against threats of deadly force, especially in one's own home when being attacked by intoxicated trespassers.

29.   Defendants knew or should have known that Plaintiffs have a right to use force to prevent a trespass.

30.   Defendants only arrested Plaintiffs "based on witness cooperation and the totality of the circumstances,"  but intentionally refused to consider all evidence available to them to prevent arresting the wrong parties, to wit: the Ring doorbell camera which captured the entire episode.

31.   "Witness cooperation" is not probable cause.

32.   Plaintiffs were arrested for aggravated assault with a deadly weapon and possession of marijuana.

33.   It is well established case law that officers must have a warrant to conduct a search of a person' home absent exigent circumstances.

34.   It is well established law that government officials cannot conduct a search or seizure of one's home without consent, a warrant, or exigent circumstances.

35. A tenant who shares an apartment with others can consent to a search of areas over which they have "common authority," such as shared spaces, but not areas exclusively controlled by another tenant.

36. Officers only obtained consent from the girlfriend of one of the tenants after putting pressure on her to consent after the tenants, Matthew and Gabriel, refused consent.

37. Common authority is established through mutual use of the property, joint access, or control for most purposes, making it reasonable to recognize that any co-inhabitant has the right to permit a search of shared areas, but not private areas.

38. A tenant cannot consent to a search of areas exclusively controlled by another tenant, such as a private bedroom, unless they have explicit or implied authority over that space.[2]

39. Defendants knew that Izzy did not have control over the entire apartment and was not the only tenant.

40. All charges were dropped against Plaintiffs.

## FIRST CLAIM FOR RELIEF
### (Fourth Amendment - UNLAWFUL SEARCH AND SEIZURE, 42 U.S.C. 1983)

41. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 40 as if fully set forth herein.

---

[2] *See Corea v. State*, 52 S.W.3d 311, 315 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

42. Defendants acted under color of state law.

43. Defendants Cisneros and Schaffner were acting in their official capacities as city officials during the events described in this complaint.

44. Defendants were also acting in their personal capacities during the events described in this complaint.

45. Defendants intentionally forced their way into Plaintiffs' apartment with neither a warrant nor exigent circumstances and such actions constitute a search under the Fourth Amendment.

46. Defendants used Plaintiffs keys to open up Plaintiffs' locked safe without a warrant or exigent circumstances and such actions constitute a search under the Fourth Amendment.

47. Plaintiffs did not consent to being detained, seized, or searched and had no choice in the matter.

48. Because there was no probable cause to arrest Plaintiffs, Defendants had no legal authority, right, or justification to detain Plaintiffs and such actions constitute a seizure under the Fourth Amendment.

49. As a direct and proximate cause of Defendants' actions, Plaintiffs' rights were violated, and they suffered damages to their liberty and freedom of movement.

**SECOND CLAIM FOR RELIEF**
**(FAILURE TO TRAIN AND SUPERVISE, 18 U.S.C. 1983)**

50. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 40 as if fully set forth herein.

51. Defendant City acted under color of state law.

52. The City of Galveston failed to train its officers on proper search and seizure procedures, as evidenced by the warrantless search of their apartment and safe.

53. The City failed to supervise its officers to ensure compliance with constitutional standards, leading to Plaintiffs' false arrest.

54. A search of civil cases filed against Galveston on Pacer and a Google search of issues with Galveston Police Officers conducting warrantless searches against citizens shows of a pattern of similar incidents or demonstrate that the City's failure to train or supervise is so egregious that constitutional violations are a highly predictable consequence. *Gast v. Singleto*n, 402 F. Supp. 2d 794, *Burge v. St. Tammany Parish*, 336 F.3d 363, *J.T. v. Uplift Educ.*, 679 F. Supp. 3d 540.

55. The City's failure to train or supervise was the "moving force" behind the constitutional violations against Plaintiffs, as required under *Monell v. Department of Social Services*.

56. The City's deliberate conduct, through its policies or lack thereof, directly caused the alleged violations against Plaintiffs' rights. *Baker v. Putnal*, 75 F.3d 190, *Kellough v. Bertrand*, 22 F. Supp. 2d 602.

57. As a direct and proximate cause of Defendant City's actions, Plaintiffs' rights were violated, and they suffered damages to their liberty and freedom of movement.

**THIRD CLAIM FOR RELIEF**
**(Conspiracy to Violate Rights,**
**18 U.S.C. 1985)**

58. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 40 as if fully set forth herein.

59. Defendants acted under color of state law.

60. Defendants Cisneros and Schaffner were acting in their official capacities as city officials during the events described in this complaint.

61. Defendants were also acting in their personal capacities during the events described in this complaint.

62. Defendants conspired with each other to violate Plaintiffs' rights incorporated in the previous paragraphs by drafting false narratives and affidavits to justify their unlawful arrest and search of Plaintiffs.

63. As a direct and proximate cause of Defendants' actions, Plaintiffs' rights were violated and they suffered damages to their liberty, property rights, and freedom of movement.

## *MONELL* LIABILITY

64. Defendant City's training and supervision of its officers was inadequate because the officers knew or should have known, and the City had a duty to ensure officers were trained on, warrant requirements prior to conducting searches without exigent circumstances.

65. Defendant City's failure to properly train and supervise its officers are the direct or proximate cause of the constitutional violations of Plaintiffs' rights.

66. Defendant City's failure to train and supervise its officers on well-established law amounts to a deliberate indifference of Plaintiffs' rights and its responsibilities to public safety.

67. At all relevant times, Plaintiffs had a clearly established right to be free from unlawful policies, practices, and customs, as well as a right to be free of unlawful seizures.

68. Defendant City showed a deliberate indifference and ratified Defendants' conduct.

69. As a direct and proximate result of Defendant City's unlawful actions, Plaintiffs were harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A)  Compensatory damages against all defendants in an amount to be

determined at trial;

B)  Punitive damages against all defendants in an amount to be determined at

trial;

C)  Injunctive relief as appropriate to prevent future violations of Plaintiffs'

constitutional rights;

D)  Reasonable attorney's fees and costs.

E)  Such other relief as the Court deems just and proper.

Respectfully submitted,

LAW OFFICES OF CJ GRISHAM, PLLC

CJ Grisham
Texas State Bar no. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Suite 103-101
Temple, Texas 76504
P:  254-405-1726

*Attorney for Plaintiffs*