IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MATTHEW MCMAHON and GABRIEL MCMAHON, Plaintiffs, | § § § § | |
| v. | § § | CIVIL ACTION NO. 2:25-CV-122 |
| OFFICER ARMONDO CISNEROS, OFFICER TYLER SCHAFFNER, and, CITY OF CORPUS CHRISTI, Defendants. | § § § § § | |

DEFENDANTS OFFICER ARMANDO CISNEROS'S AND
OFFICER TYLER SCHAFFNER'S RULE 12(b)(6) MOTIONS TO DISMISS

TO THE HONORABLE U.S. DISTRICT JUDGE DAVID S. MORALES:

NOW COME Defendants, Officer ARMANDO[1] CISNEROS ("Ofc. Cisneros") and Officer TYLER SCHAFFNER ("Ofc. Schaffner"), to file this reply in support of their Rule 12(b)(6) Motion and respectfully ask that the Court dismiss the claims asserted in the Original Complaint of Plaintiffs, MATTHEW MCMAHON and GABRIEL MCMAHON ("Plaintiffs") (the "Complaint"),[2] for failure to state a claim against Officer Cisneros or Officer Schaffner that pierces her immunity and/or upon which relief may be granted.

I.
INTRODUCTION

1.      By Plaintiffs' pronouncement, "[t]his is a civil rights action under the Fourth and Fifth Amendments of the U.S. Constitution, involving Negligent Hiring, Negligent Training, Malicious Prosecution, and violations under 18 U.S.C. §§ 1983 and 1985. It challenges the Defendants' actions that violated the Plaintiffs' rights.[3]

---

[1]    Defendant Officer Armando Cisneros notes that his first name is misspelled in the style of the case and the Complaint.
[2]    [ECF No. 1].
[3]    [ECF No. 1, at p. 4].

2.      Plaintiff in this action are Matthew McMahon and Gabriel McMahon (hereinafter "Plaintiffs"), who filed this suit against the City of Corpus Christi, Texas ("Corpus Christi"), and Officers Cisneros and Schaffner, in their official and individual capacities, on May 12, 2025, specifically alleging that the Officers violated Plaintiffs' Fourth Amendment rights and are liable under the 42 U.S.C. §1983. Plaintiffs allege also a conspiracy claim against Ofc. Cisneros, Ofc. Schaffner, and the City of Corpus Christi. The events forming the basis for Plaintiffs' Complaint are alleged to have occurred in Plaintiffs' apartment in Corpus Christi, Texas, on the evening of May 11, 2023, and carried over into the early morning hours of May 12. 2023.

3.      Plaintiffs' Complaint fails to assert a cognizable claim against Ofc. Cisneros or Ofc. Schaffner, upon whom relief can be granted. *See* FED. R. CIV. P. 12(b)(6).

II.
SUMMARY OF FACTS

4.      As alleged in the Plaintiffs' Complaint, on or about May 12, 2023, law enforcement officers with the Corpus Christi Police Department ("CCPD") responded to a 911 call regarding an assault perpetrated by the Plaintiffs in their apartment.[4] Upon arrival, officers attempted to get Plaintiffs to exit their home voluntarily, threatening arrest when they refused. Plaintiffs eventually exited, purportedly claiming to have video evidence proving their innocence—i.e., that the women had purportedly acted aggressively, subsequently prompting the need for Plaintiff to secure their firearms when Plaintiffs claim one of the women brandished a knife.[5] Per the Complaint, officers declined to view the video evidence, placed Plaintiffs under arrest, and, subsequently, proceeded to conduct a search of the apartment, allegedly pressuring a girlfriend to sign a consent form without authority.[6]

---

[4]   [ECF No. 1, at ¶ 17].
[5]   [*Id.*].
[6]   [*Id.*].

2

5.      Plaintiffs were each charged with aggravated assault with a deadly weapon.[7] The charges were later dismissed.[8]

III.

SUMMARY OF ALLEGATIONS AGAINST
DEFENDANTS OFFICER CISNEROS AND OFFICER SCHAFFNER

6.      In his Original Complaint, the Plaintiffs make the following allegations against Ofc. Cisneros and Ofc. Schaffner:

- Officers Cisneros and Schaffner, acting in both their official and personal capacities, were involved in the events outlined in the Complaint.[9]

- Officers Cisneros and Schaffner allegedly conspired to draft false narratives and affidavits to provide a false justification for the unlawful arrest and search of the Plaintiffs' apartment.[10]

- As a direct result of the Defendants' actions, the Plaintiffs suffered violations of their constitutional rights, leading to damages related to their personal liberty, property interests, and freedom of movement, along with emotional distress and financial impacts.[11]

7.      Plaintiffs seek compensatory and punitive damages from all defendants and injunctive relief to prevent future violations of their constitutional rights.

IV.

SUMMARY OF THE ARGUMENT

8.      Under Rule 12(b)(6), Ofc. Cisneros and Ofc. Schaffner respectfully requests that this Court dismiss all claims against them. Plaintiffs have not stated any actionable claim under 42 U.S.C. § 1983 for violations of the Fourth Amendment. Ofc, or for conspiracy to deprive him of his rights pursuant to 42 U.S.C. § 1985. Schaffner was not present on the night in question and

---

[7]    [ECF No. 1, at p. 4; ¶ 32]/
[8]    Plaintiffs allege that the charges were dismissed on May 26, 2023. [ECF No. 1, at p. 4]. Defendants request that the Court take judicial notice of the Nueces County Register of Actions docket sheet for Cause Nos. 23FC-1848B and 23FC-1845B, pertaining, respectively, to the criminal cases of Matthew and Gabriel McMahon.  Contrary to Plaintiffs' representation, the felony charges were not dismissed against the Plaintiffs until April 17, 2025. Please refer to Exhibit A and Exhibit B.
[9]    [ECF No. 1, at ¶¶ 60-63].
[10]   [Id.].
[11]   [Id.].

3

played no role in the events alleged in the Complaint. He must be immediately dismissed from this suit. In addition, Ofc. Cisneros is entitled to qualified immunity against the Plaintiffs' unlawful arrest claim. Not only do Plaintiffs fail to allege facts showing a violation of their Fourth Amendment rights, but their allegations fall woefully short of showing that Ofc. Cisneros engaged in objectively unreasonable conduct in light of the clearly established law at the time. As such, Plaintiffs fail to meet their pleading burden to overcome Of. Cisneros's assertion of qualified immunity. Therefore, this Court should dismiss their claim of unlawful arrest.

9.      Second, Plaintiffs' conspiracy claims must be dismissed under the single entity doctrine. Under this long-standing doctrine, individuals employed by the same entity, like Ofc. Cisneros is not considered separately from each other. In support of their § 1983 and § 1985(3) conspiracy claims, Plaintiffs allege Ofc. Cisneros, Ofc. Schaffner and the City are the only co-conspirators. However, because Ofc. Cisneros and Ofc. Schaffner were both employed by the CCPD at all relevant times, the single entity doctrine prevents these Defendants from being considered separately. Therefore, Plaintiffs' allegations fail to satisfy the first element of their conspiracy claims, which is that "two or more persons" were involved. Plaintiffs also fail to allege racial animus, which is a requirement of their conspiracy cause of action.

10.      Because Plaintiffs' allegations fail to meet their pleading burden for their unlawful arrest and conspiracy claims, this Court must dismiss Plaintiffs' claims against Ofc. Cisneros and Ofc. Schaffner with prejudice for failure to state a claim upon which relief can be granted.

V.
STANDARD OF REVIEW

A.  Dismissal Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

11.      A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint

because it fails to state a legally cognizable claim."[12]  In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff.[13]  Nevertheless, "the plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged."[14] The "[f]actual allegations must be enough to raise a right to relief above the speculative level."[15]

12.    Generally, the court may not look beyond the four corners of the plaintiff's pleadings;[16] however, the Court may consider matters that are outside the pleadings if those materials are matters of public record.[17] The court may also consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[18] The Court may also consider "the complaint plus undisputed facts evidenced in the record; or . . . the complaint, undisputed facts, and the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996)).

---

[12]    *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Humana, Inc. v. Shrader & Assocs.*, 584 B.R. 658, 670 (S.D. Tex. 2018); *Faas v. Cascos*, 225 F. Supp. 3d 604, 609 (S.D. Tex. 2016).

[13]    *Warren v. Chesapeake Expl., L.L.C.*, 759 F.3d 413, 415 (5th Cir. 2014).

[14]     *Ramming*, 281 F.3d at 161 (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)).

[15]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[16]    *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999).

[17]    *Cox v. Richards*, 761 F. App'x 244, 248 (5th Cir. 2019) (holding the district court's consideration of publicly available records in plaintiff's prior court proceedings on a 12(b)(6) motion to dismiss was proper); *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) (citing *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)

[18]    *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) ("[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (*quoting Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011))).

## VI.
## ARGUMENTS AND AUTHORITIES

A. <u>It Is Beyond Dispute that Defendant Schaffner Played No Role in the Events Alleged in the Complaint; Therefore, All Claims Against Him Must Be Dismissed.</u>

13.     It bears repeating that Plaintiffs filed suit against CCPD Officer Tyler Schaffner. As part of their criminal cases, the Plaintiffs requested and received discovery from the State, which surely would have included a copy of the event's Arrest Report and Probable Cause statement(s),[19] not to mention a copy of the Incident Report. Indeed, the undersigned understands Plaintiffs to be referring to the probable cause statement when alleging that "Defendants intentionally left out the important facts, such as the fact that Leah grabbed two kitchen knives . . . [,]"[20] and certainly when they quote the probable cause, nearly verbatim.[21] A rudimentary review of the documents foundational to Plaintiffs' claims leaves no doubt that not only have Plaintiffs filed suit against the wrong CCPD officer, but contrary to Plaintiff's allegation, Ofc. Schaffner played no role in the events leading up to and/or following Plaintiffs' arrest on May 12, 2023.

14.     Despite presumably having a copy of the relevant reports before preparing their Complaint in this matter, Plaintiffs inexplicably filed suit and served CCPD Officer Tyler Schaffner. Despite the Plaintiffs presumably being aware that at least one of the officers with whom they initially interacted on the night in question was a female, Plaintiffs opted to file suit against two male officers. At a minimum, this suggests more than a mere mistake in ascertaining the proper parties. Even if it was a mistake, however, it should be clear, if not undisputed, that it

---

[19]   Please refer to Exhibits C and D, attached hereto, true and accurate copies of the pertinent Arrest Reports and Probable Cause Statements.

[20]   [ECF No. 1, at ¶ 27].

[21]   [*Id.*] ("prior to 'Matthew grab[bing] his gun and point[ing] it at Leah's head.'"); *see also*, Ex. C and Ex. D, p. 2. It is reasonably deduced that Plaintiffs are referencing the probable cause statement when they assert that Defendants "draft[ed] false narratives and affidavits to justify their unlawful arrest and search of the Plaintiffs." [ECF No. 1, at ¶ 62].

was not proper to join Ofc. Schaffner, as sued herein, in this suit. As he should never have been named as an individual Defendant in the Complaint, he should be dismissed promptly.

15.    Ofc. Schaffner did not participate in any of the events alleged in the Complaint and, therefore, should be expeditiously dismissed from this lawsuit. There is no factual or legal basis warranting his inclusion in these proceedings, and his removal is not only in the interest of justice but will also undoubtedly contribute to a more efficient judicial process.

B.    <u>The Single Entity Doctrine Bars Plaintiffs' Conspiracy Claims Against Officers Cisneros and Schaffner and Must Be Dismissed</u>.

16.    Plaintiffs bring conspiracy claims against Ofc. Cisneros and Ofc. Schaffner under 42 U.S.C. §§ 1983 and 1985(3). "An action for conspiracy may be maintained under section 1983."[22]  To succeed on a § 1983 conspiracy claim, a plaintiff  must show "(1) the existence of a conspiracy involving state action," and "(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[23] To succeed on a conspiracy claim under § 1985(3):

> a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.[24]

17.    "In so doing, the plaintiff must show that the conspiracy was motivated by a class-based animus."[25] Plaintiffs' § 1985(3) conspiracy claims must be dismissed because the single entity doctrine prevents Plaintiffs from satisfying their claim. "The single entity doctrine says that individuals employed by the same entity are not considered separately from the entity or each other, such that they are not capable of conspiring among themselves."[26]

---

[22]    *Ryland v. Shapiro*, 708 F.2d 967, 974 (5th Cir. 1983).
[23]    *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992)).
[24]    *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994).
[25]    *Id.*, at 653.
[26]    *Bright v. City of Killeen*, No. 6:20-CV-431-ADA-JCM, 2021 U.S. Dist. LEXIS 185580, at *14 (W.D. Tex. 2021), adopted, 2021 WL 4427486 (W.D. Tex. Sept. 27, 2021). "Although the [single entity] doctrine arose in the

18.     Here, all of the defendants are members of a single entity, and a conspiracy claim against them is barred by the single entity (or, as some courts refer to it, the intra-corporate conspiracy doctrine), even though the conspiracy is alleged against the officers in their individual in addition to their official capacities and even if the police department is not specifically alleged to have been a party to the conspiracy.[27]

19.     Admittedly, there are exceptions to the applicability of the single entity doctrine, such as (1) when the alleged conspirators have "an independent stake in achieving the object of the conspiracy;" (2) where the alleged conspirators are acting for their own personal purposes; and (3) when the defendants act outside the scope of their employment, their actions exceed the bounds of their authority, or they have engaged in unauthorized acts.[28]

20.     Ofc. Schaffner was not present at the scene and, therefore, did not conspire with anyone on any point pertinent to this case.[29]

21.     Ofc. Cisneros did not act outside of the scope of his employment. The Complaint states that Ofc. Cisneros investigated and submitted a probable cause affidavit, but such actions are well within his scope of employment as an officer with the police department. Additionally, even if the affidavit was not based on probable cause, but instead included false statements, material omissions of exculpatory facts, and highly misleading statements, Plaintiffs nonetheless allege that insufficient facts show Cisneros was on notice that he was committing a constitutional

---

antitrust context, it has been applied to public entities and has been extended to civil rights conspiracies under §§ 1985 and 1983." *Collins v. Bauer*, Civil Action No. 3:11-CV-00887-B, 2012 U.S. Dist. LEXIS 17769, at *19 (N.D. Tex. Jan. 23, 2012), report and recommendation adopted, No. 3:11 CV-00887-B, 2012 WL 444014 (N.D. Tex. Feb. 10, 2012).

[27]   *Collins*, Civil Action No. 3:11-CV-00887-B, 2012 U.S. Dist. LEXIS 17769, at *19; *see also Reynosa v. Wood*, 134 F.3d 369, 369 (5th Cir. 1997) (per curiam) ("where all of the defendants are members of the same collective entity, the conspiracy does not involve two or more people")

[28]   *Collins*, Civil Action No. 3:11-CV-00887-B, 2012 U.S. Dist. LEXIS 17769, at **19-21.

[29]   As addressed in Section VI.(A) of this Motion, *supra*, Ofc. Schaffner played no role in any of the events alleged in the Complaint, and should be promptly dismissed from this suit.

violation. Therefore, the Court must find that Plaintiffs failed to sufficiently plead that Cisneros acted outside of the scope of his employment.

22.      Plaintiffs have not sufficiently pleaded facts for the contention that Ofc. Cisneros was acting for his own personal purposes. Instead, Plaintiffs allege that officers "were acting in their official capacities as city officials during the events described in this complaint[,]" and only make conclusory allegations that, Ofc. Cisneros "w[as] *also* acting in [his] personal capacit[y,]" when [he] conspired to draft false narratives and affidavits to justify an unlawful arrest.[30] The Complaint does not contain any facts tending to show that Defendant officers had an independent stake in achieving the object of the purported conspiracy or any other personal purpose. The sum of Plaintiffs' claim is that the officers were acting in the course and scope of their employment. No well-pleaded allegation contained in the Complaint implies otherwise. Accordingly, Plaintiffs fail to plead facts that show that either of the officers was acting for his own personal purposes.

23.      Because Ofc. Cisneros and Ofc. Schaffner neither exceeded their authority nor were motivated by personal interest, the single entity doctrine applies to bar Plaintiffs' conspiracy claims. Plaintiffs cannot establish the first element of a conspiracy claim under either § 1983 or § 1985(3)—namely, they have not alleged two or more separate persons were engaged. As such, this Court must dismiss Plaintiffs' conspiracy claims brought against Ofc. Cisneros and Ofc. Schaffner under § 1985(3) with prejudice.

C.   <u>Plaintiffs' Section 1985 Conspiracy Claims Fail For Failure to Plead Racial Animus</u>.

24.      Plaintiffs categorize their third claim for relief as asserting conspiracy to violate rights, "18 U.S.C. 1985."[31]

---

[30]   [ECF No. 1, ¶¶ 60-61].
[31]   [ECF No. 1, at p. 14]. The provided U.S. Code citation "18 U.S.C. 1985" appears to contain a typo, and what Plaintiffs likely intended was a citation to Title 42 of the US Code, not Title 18—i.e., 42 U.S. Code § 1985, and more particularly subsection (3), which addresses conspiracy to deprive persons of rights or privileges.

25.     Racial animus is an element of a section 1985(3) claim.[32] Plaintiffs make no such allegation, and there is zero reference to race in the Complaint at all. Instead, Plaintiffs allege officers showed a bias towards drunken trespassers, dismissing Plaintiffs' account of events in favor of a phone call made by attractive women.[33]

26.     Accordingly, because Plaintiffs have not pleaded a race- or class-based conspiracy, the Court must grant Ofc. Cisneros' and Ofc. Schaffner's motion to dismiss the § 1985(3) claims.[34]

D. Any Claims Against Ofc. Cisneros or Ofc. Schaffner in Their Individual Capacities Is Also Barred by Qualified Immunity.

i.   Legal analysis and assertion of qualified immunity at the motion to dismiss stage.

27.     Notwithstanding the fact that qualified immunity is an affirmative defense, a plaintiff must negate this declaration once raised, and thus, Plaintiffs, here, must overcome the assertion at the motion to dismiss stage.[35]   As this Court recently noted, "[i]n *Iqbal*, the Supreme Court considered and addressed the defense of qualified immunity at the motion to dismiss stage," and "the Fifth Circuit expanded upon this precedent, explaining that courts are obligated to 'implement a qualified immunity defense 'at the earliest possible stage of litigation,'' because an official is entitled to immunity from suit, not merely from liability."[36]

28.     "Qualified immunity protects officers from suit unless their conduct violates a

---

[32]   *Cunningham v. Turner*, Civil Action No. 3:24-CV-0154-D, 2025 U.S. Dist. LEXIS 6838, at *14 (N.D. Tex. 2025) (citing *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) ("[I]n this circuit . . . the only conspiracies actionable under section 1985(3) are those motivated by racial animus.")).

[33]   [ECF No. 1, at ¶¶ 18-19].

[34]   *See Cunningham v. Turner,* Civ. Action No. 3:24-CV-0154-D, 2025 U.S. Dist. LEXIS 6838, at *15 (N.D. Tex. 2025) *(citing Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001) ("[Plaintiff] has alleged no racial animus, so her claim fails; the district court correctly dismissed it under Fed. R. Civ. P. 12(b)(6).").

[35]   *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (qualified immunity is an "immunity from suit rather than a mere defense to liability"); *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009); *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016)) ("[o]nce a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.'").

[36]   *Smith v. Wellpath Recovery Sols., LLC*, No. 2:21-CV-00235, 2022 U.S. Dist. LEXIS 181922, at *11-12 (S.D. Tex. 2022) (citing 556 U.S. at 677-82, and *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018)); *see also Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive.").

clearly established constitutional right[,]"[37] so that "[w]hen properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."[38]  The analysis requires evaluating (1) whether a reasonable jury could find that an official violated a statutory or constitutional right, and (2) whether the right at issue was "clearly established" so that, at the time, a "reasonable person would have known" they were violating that right.[39] The plaintiff is responsible for showing that the facts alleged demonstrate the officer violated a constitutional right and that the right was clearly established at the time of the violation.[40] Both prongs must be satisfied by a plaintiff in order for qualified immunity to be denied, and the Court can choose which prong to address first, *id.*, at 236-45, but if "the plaintiff fails to state a constitutional claim . . ., then the government official is entitled to qualified immunity."[41]

29.    Plaintiffs cannot get past the first step of the qualified-immunity analysis because the Complaint fails to allege and establish the constitutional right they claim exists and show how it was violated.[42]  The guiding tenets of the plausibility analysis articulated in *Iqbal* are particularly relevant, as the Supreme Court's discussion of the pleading standards and treatment of "threadbare recitals" and "mere conclusory statements" occurred in the context of qualified immunity.[43]

30.    A court evaluating an assertion of qualified immunity must "consider[ ] only the facts that were knowable to the defendant officers[,]"[44] because "[a]n official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight."[45]  Here,

---

[37]  *Hyatt*, 843 F.3d at 177
[38]  *al-Kidd*, 563 U.S. 731, 743 (2011).
[39]  *Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 419, 211 L. Ed. 2d 388 (2021); *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Bishop v. Arcuri*, 674 F.3d 456, 460 (5th Cir. 2012).
[40]  *Pearson*, 555 U.S. at 236, (2009) (discussing the modified inquiry under *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).
[41]  *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).
[42]  *Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).
[43]  556 U.S. at 673 (sufficiency of the pleadings is "inextricably intertwined" and "directly implicated by" the qualified immunity defense).
[44]  *White v. Pauly*, 580 U.S. 73, 77 (2017) (per curiam).
[45]  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

the sum and substance of the initial "constitutional" allegation concerning Ofc. Cisneros and Ofc. Schaffner was that they "only arrested Plaintiffs 'based on witness cooperation and the totality of the circumstances,' but intentionally refused to consider all evidence available to them to prevent arresting the wrong parties, to wit: the Ring doorbell camera which captured the entire episode."[46]

31.      Even if, as Plaintiff's plead, they informed officers of the Ring doorbell footage,[47] the Complaint fails to plead a claim that overcomes Ofc. Cisneros' qualified immunity. Probable cause is not a high bar: it requires the "kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'"[48] "That standard does not require that the officer believe that it is more likely than not that the suspect committed the offense."[49] "Instead, the officer must reasonably believe there was a 'fair probability' he did."[50] "That fair probability of criminal conduct usually exists just from the statement of a single eyewitness, assuming no reliability concerns."[51] Ofc. Cisneros was entitled to accept the women's account of the undisputed facts— i.e., that Izzy was a co-tenant, that the women were in the apartment with Izzy's consent, and that Plaintiffs confronted them with firearms. Because Ofc. Cisneros could have reasonably believed probable cause existed for the Plaintiffs' arrest, that arrest did not violate Plaintiffs' Fourth Amendment rights. Accordingly, Plaintiffs have not pled a constitutional right that was violated.

32.      After Plaintiffs exited the apartment, according to Plaintiffs, officers tried to get permission to search their apartment, but when they refused consent, Officers pressured Gabriel's girlfriend, who, according to Plaintiffs, lacked the authority to grant it, into signing a release for the search.[52] A warrantless police entry into a residence is presumed unreasonable unless the entry

---

[46]   [ECF No.1, at ¶ 30]. Plaintiffs' Complaint does raise some questions regarding how a doorbell camera could capter the "whole episode," much of which Plaintiff appears to plead occurred inside the apartment.
[47]   [ECF No. 1, at p. 3]. Although not reviewable at this stage, the evidence appears to contradict Plaintiffs' claim.
[48]   *Kaley v. United States*, 571 U.S. 320, 338 (2014); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley*, 571 U.S. at 338).
[49]   *United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001).
[50]   *Id.* (citing *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000) (per curiam)).
[51]   *Id.* (citations omitted).
[52]   [ECF No. 1, at ¶¶ 18-19].

falls within one of a well-defined group of exceptions, of which voluntary consent is one.[53] A co-occupant assumes the risk that another co-occupant will consent to a search.[54] The rules, "one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it," are complementary.[55] The rules apply unless police removed the potential objector, and that removal was "not objectively reasonable."[56]

33.     Here, Ofc. Cisneros acted reasonably under the consent exception to the warrant requirement. First, Izzy consented to the search of the apartment in writing, and she had at least apparent authority to do so. Even if actual authority does not exist, consent may be validly obtained from an individual with apparent authority over the premises..[57]   Apparent authority is judged under an objective standard, and exists if "the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises."[58] As the Supreme Court discussed in *Georgia v. Randolph*, reasonableness hinges on "widely shared social expectations" and "commonly held understanding about the authority that co-inhabitants may exercise in ways that affect each other's interest."[59]

34.     Here, Ofc. Cisneros acted reasonably under the consent exception to the warrant requirement. First, Izzy consented to the search of the apartment, and she had at least apparent authority to do so.  Plaintiffs assumed the risk that their co-tenant would consent to a search.[60]

---

[53]   *See United States v. Zavala,* 459 F. App'x 429, 433 (5th Cir. 2012) (*citing United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995)).

[54]   *United States v. Matlock*, 415 U.S. 164, 169-71 (1974).

[55]   *Georgia v. Randolph*, 547 U.S. 103, 121-122 (2006); *id.*, at 106 (" . . . if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not part of the threshold colloquy, loses out.").

[56]   *Fernandez v. California*, 571 U.S. 292, 302 (2014).

[57]   *llinois v. Rodriguez*, 497 U.S. 177, 188 (1990).

[58]   *Id*. (internal quotations omitted).

[59]   547 U.S. at 111.

[60]   *Matlock*, 415 U.S. at 169-71.

Plaintiffs were not physically present to dispute that consent.[61] And their removal—i.e., their detention on allegations of aggravated assault with a deadly weapon—while imperfect by Plaintiffs' estimation, it was not objectively unreasonable.[62] Therefore, the rule recognizing Izzy's permission applies.[63]

35.    Beyond that, Plaintiffs make the following self-serving, conclusory allegations:

- Officers knew no one else was home and lacked exigent circumstances for a warrantless search.[64]

- Officers recognized that Izzy could not consent and that a warrant was needed for a locked safe in Matthew's closet.[65]

- Officers were aware that the Plaintiffs had the right to evict Leah Harmon and use deadly force against threats in their home.[66]

36.    Plaintiffs misconstrue the nature of the affirmative defense available under Section 9.41(a) of the Texas Penal Code. First, Plaintiffs themselves suggest, if not outright plead, that "Leah" and the other alleged aggressors, arrived at the apartment on the night in question in response to an invitation from Izzy, who Plaintiffs do not dispute was a co-tenant of the apartment.[67] As someone who cohabitated with Plaintiffs on the property in question, Izzy apparently had co-equal legal authority to invite Leah and the others to enter the apartment on the night in question, thus negating Plaintiffs' contention that they were trespassers.[68] Plaintiffs do not allege that Izzy did not invite or request Leah and the others to enter the apartment, or that Izzy

---

[61]   *Randolph*, 547 U.S. at 122-23.

[62]   *Fernandez*, 571 U.S. at 302.

[63]   *Id.* at 303 ("[A]n occupant who is absent due to a lawful detention or arrest stands in the same shoes as an occupant who is absent for any other reason.").

[64]   [ECF No. 1, at ¶¶ 20-32].

[65]   [*Id.*].

[66]   [*Id.*].

[67]   [ECF No. 1, at ¶¶ 35-39].

[68]   *See e.g.*, *Amero v. Dir., Tex. Dep't of Crim. Just.-Corr. Insts. Div.*, No. 2:20-CV-21-Z-BR, 2021 U.S. Dist. LEXIS 252063, at *37 (N.D. Tex. 2021)

requested that Leah and the other supposed aggressors leave. The Complaint alleges only that Plaintiffs demanded that the women leave the apartment.[69]

37.     Applicable Texas law defines criminal trespass as when a person enters or remains on or in the property of another without effective consent and the person (1) had notice that the entry was forbidden, or (2) received notice to depart but failed to do so.[70]   Thus, unless Ofc. Cisneros had information that the women did not have effective consent from Izzy when she entered the apartment, or that the women remained after being notified by Izzy that she was no longer welcome—it was not unreasonable for him to believe Plaintiffs' conduct was not excused.

ii.   <u>Plaintiffs Failed to Allege Facts Demonstrating Defendants Violated a Clearly Established Right</u>.

38.     Even if Plaintiffs alleged a plausible Fourth Amendment claim, they cannot overcome Ofc. Cisneros's qualified immunity—because he did not violate a right that has been clearly established. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"[71]   The Supreme Court has warned that courts must not "define clearly established law at a high level of generality."[72]   While the constitutional right under the Fourth Amendment to be free from an arrest without probable cause is clearly established as a general proposition, that is not enough for qualified immunity purposes.[73]   Stated differently, cases that are "too factually distinct to speak clearly to the specific circumstances" at issue are not enough to deny qualified immunity.[74]   Again, "[p]laintiffs have the burden to demonstrate that the law was 'clearly established." A case directly

---

[69]   [ECF No. 1, at ¶ 17].
[70]   *State v. Meru*, 414 S.W.3d 159, 163 (Tex. Crim. App. 2013 (*quoting* Tex. Pen. Code § 30.05(a)).
[71]   *al-Kidd*, 563 U.S. at 741.
[72]   *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (citation omitted).
[73]   *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).
[74]   *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam); *see also Mullenix*, 577 U.S. at 12 ("[t]he dispositive question is whether the violative nature of particular conduct is clearly established").

on point is not required to conclude that the law is clearly established, 'but existing precedent must have placed the . . . constitutional question beyond debate.'"[75]

39.     Reasonable mistakes by police officers, even leading to the arrest of the wrong person, do not implicate the Fourth Amendment.[76]  In deciding whether probable cause exists, police officers are not required to be perfect, nor do they have to err on the side of caution "out of fear of being sued."[77] The applicable standards, of course, are not what an omniscient officer would have seen but rather what a reasonable officer would have done with what he did see.[78]

40.     Plaintiffs allege, pertinent to this discussion, that they "have a clearly established right to be free from unlawful seizure."[79] Not only does such pleading constitute legal and factual conclusory allegations undeserving of the presumption of truth, it is directly contradicted holistically by their pleading for reasons outlined above.  There is no dispute, at a minimum, that two women, at least, were inside the apartment with consent of a co-tenant, and provided eyewitness testimony of the events occurred inside the apartment, more specifically, that Plaintiffs confronted them with firearms.[80] Moreover, the core of such pleading draws the nebulous, broad-stroke method the Supreme Court routinely warns about when undertaking qualified immunity determinations.

41.     As applied to the qualified immunity inquiry, in essence, Plaintiffs must show that no officer could have reasonably believed that they had probable cause to arrest the Plaintiffs for any crime, or that subsequent to the decision to arrest Plaintiffs, that they had valid consent from a person with, at minimum, apparent authority, to conduct a search.[81]

---

[75]     *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (*quoting al-Kidd*, 563 U.S. at 741); *Melton v. Phillips*, 875 F.3d 256, 265 (5th Cir. 2017) (". . . there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitely unlawful.").

[76]     *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 436 (5th Cir. 2015).

[77]     *Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir. 1992).

[78]     *See e.g., State of Texas v. Duran*, 396 S.W. 3d 563 (Tex Crim App. 2013).

[79]     [ECF No. 1, ¶ 67].

[80]     [ECF No. 1, p. 3].

[81]     *O'Dwyer v. Nelson*, 310 F. App'x 741, 742 (5th Cir. 2009); *see also Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004).

42.     Accordingly, Plaintiffs have failed to plead a claim that overcomes either Ofc. Cisneros, or Ofc. Schaffner's, qualified immunity.

CONCLUSION

43.     For these reasons, Defendants Armando Cisneros and Tyler Schaffner respectfully request that the Court grant this motion to dismiss in its entirety and dismiss Plaintiffs' claims brought against Officers Cisneros and Schaffner with prejudice to the refiling of the same. Officers Cisneros and Schaffner further requests that Plaintiffs take nothing by their claims in any capacity, that all relief requested by Plaintiffs against Officers Cisneros and Schaffner pursuant to those claims be denied, and that Officers Cisneros and Schaffner recover all costs of suit, as well as all further relief to which they may be justly entitled.

Respectfully submitted,

WOOD, BOYKIN & WOLTER, P.C.
555 N. Carancahua, Suite 1510
Corpus Christi, Texas 78401
Telephone: (361) 888-9201
Facsimile: (361) 888-8353
Email: rg@wwbwpc.com

By:   /s/ Renatto Garcia
      Renatto Garcia
      Federal I.D. No. 3102277
      State Bar No. 24090113

ATTORNEYS FOR DEFENDANTS,
OFFICER ARMANDO CISNEROS AND
OFFICER TYLER SCHAFFNER

17

NOTICE OF ELECTRONIC FILING

The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and preceding by the Electronic Case Files System of the Southern District of Texas on the 14th day of July 2025.

/s/ Renatto Garcia
Renatto Garcia

CERTIFICATE OF SERVICE

I hereby certify that on this the 14th day of July 2025, a true and correct copy of the above and preceding legal document was served electronically on the known Filing User listed below through the Notice of Electronic Filing, as indicated below:

*Via* CM/ECF:

Mr. CJ Grisham
3809 S. General Bruce Dr.
Suite 103-101
Temple, Texas 76504
Email: cj@cjgrisham.com

Ms. Lilia K. Castro
CITY OF CORPUS CHRISTI
Legal Department
P.O. Box 9277
Corpus Christi, Texas 78469-9277
Email: LiliaC@cctexas.com

ATTORNEY FOR PLAINTIFFS

ATTORNEY FOR DEFENDANT,
CITY OF CORPUS CHRISTI

/s/ Renatto Garcia
Renatto Garcia

2784\37\Mtns Ntc Orders\25.07.14 Defs' R. 12(b)(6) MTD  [16]

18